LUKE PELLETIER *vs*. CENTRAL MAINE POWER COMPANY.

Waldo.    Opinion December 15, 1924.

*In a common law action brought by an employee to recover compensation for*
. *injuries received in the employ of a non-assenting employer under the Workmen's*
*Compensation Act, since negligence is the basis of all actions for injuries suffered*
*by employees, the plaintiff must allege and prove that his injury was in whole, or in*
*part, caused by the negligence of his employer or of some person for whose care the*
*employer is responsible, which, in the case of so-called large employers, includes*
*negligence of fellow servants.*

The question of negligence of fellow servants is one of fact, and their negligence
and its causative effect are to be decided by the jury; and a verdict in favor of
the plaintiff will not be disturbed unless it appears affirmatively that their
verdict was the result of bias, prejudice or misunderstanding of the testimony
and the law applicable to the case.

It is not necessary to consider exceptions to the admission or exclusion of testi-
mony relating to negligent methods of the employer, independent of the
negligence of fellow servants, where the verdict is clearly sustainable because
of the negligent acts of those fellow servants independent of any alleged negli-
gent methods in vogue by the defendant itself.

On motion and exceptions.    A common law action by an employee
to recover for injuries received in the employ of a non-assenting
employer under the Workmen's Compensation Act.    The plaintiff
with other employees of defendant were engaged in hauling poles on
a truck and in unloading one of the large poles, the plaintiff, in assist-
ing the other employees, let go of the pole with his hands and got
under the end of it back to the others and lifted with the pole on his

shoulder and back and as the pole swung over the side of the truck the weight of the pole forced him to the ground resulting in his injuries. Plaintiff alleged negligence on the part of defendant and also negligence of fellow servants. Defendant pleaded the general issue. A verdict for plaintiff was rendered for $4,390, and defendant filed a general motion for a new trial, and also excepted to several rulings; granting leave to amend; the exclusion of certain testimony; and refusal to direct a verdict for defendant. Motion and exceptions overruled.

The case is fully stated in the opinion.

*Thaxter & Holt,* for plaintiff.

*McLean, Fogg & Southard,* for defendant.

SITTING: CORNISH, C. J., PHILBROOK, DUNN, MORRILL, WILSON, DEASY, JJ.

PHILBROOK, J. This is an action brought by an employee of the defendant to recover compensation for injuries received while in its employ and claimed by him to be due to the defendant's negligence. At the time when the injuries were suffered the defendant was not an assenting employer under the Workmen's Compensation Act and was therefore denied the privilege of the defenses of contributory negligence of the plaintiff, negligence of a fellow servant, or assumption of risk. On the other hand, since negligence is the basis of all actions for injuries suffered by employees, the plaintiff must allege and prove that his injury was in whole, or in part, caused by the negligence of his employer or of some person for whose care the employer is legally responsible, which, in the case of so-called large employers, includes negligence of fellow servants. *Nadeau* v. *Caribou Water, Light & Power Co.,* 118 Maine, 325.

Briefly stated, the plaintiff, with fellow employees, was engaged in moving electric light poles from another location to the defendant's yard where the same were to be piled. The large ends of the poles were placed on a small motor truck and securely lashed thereto. The small ends dragged upon the ground. The body of the truck had vertical sides, surmounted by a flange which inclined outward. On arriving at the piling place the lashings were loosened. The crew then lifted the large ends of the poles over the side and flange of the truck body and threw or dropped them upon the ground.

At the time of the accident the crew had unloaded one pole successfully. They then attempted to unload the remaining pole, two poles constituting a load. Because of the weight of the pole, or because it was crooked and not easily handled, or for some other reason, the members of the crew who were lifting it were not readily accomplishing their effort. Whereupon the plaintiff, standing upon the ground, put his shoulder and back underneath the pole and lifted. When the pole, by the combined efforts of the plaintiff and the other members of the crew, was raised sufficiently to clear the side and flange of the truck body, then, to use the words of the plaintiff, "I felt the weight on me, onto my shoulder, and down I went with the pole on top of my shoulder and back."

The negligence charged consisted of several elements; (1) that the other employees, fellow servants of the plaintiff, suddenly and without warning to the plaintiff, and while he had the pole on his shoulders and back, carelessly and negligently let said pole slip from their arms and the whole weight of the same came on the plaintiff who was thrown to the ground with the pole on top of him; (2) that as the pole was lifted above and over the flange, suddenly and without warning to the plaintiff, and while he had the pole on his shoulders and back, the other employees, fellow servants of the plaintiff, carelessly and negligently threw the pole sideways to the ground while the plaintiff was still carrying the same, from which negligent act the injuries were suffered; (3) that the defendant negligently failed in its duty to provide a sufficient number of men to lift the pole and handle the same without causing injury to those engaged in unloading; (4) that it was the duty of the defendant to provide proper and safe appliances in order to lift the pole or to bear the weight of same while it was being removed from the truck, but neglecting its duty the defendant provided no appliances of any kind to be used in handling the poles and that the accident happened because of the failure of the defendant in this respect; (5) it was the duty of the defendant to adopt a proper and safe method of removing poles from the truck but, neglecting its duty in that respect, it did not unlash the pole and pull the truck from underneath it, thus permitting the pole to fall to the ground without the necessity of its being lifted; nor did the defendant use a trailer for supporting the poles by means of which they could have been unlashed from the truck and rolled from the trailer to the ground without necessity of lifting; (6) that the defend-

ant negligently failed to use cant-dogs and skids to roll the poles from the truck and permit them to fall to the ground without the necessity of lifting the same.

Thus it will be seen that the first two charges are directed against the negligence of fellow servants in either letting the pole slip, or in throwing it, suddenly, negligently and without warning. The other four directly charge the defendant with negligence in not providing a sufficient crew, nor proper appliances, nor proper methods of doing the work.

The plaintiff recovered a verdict and the case is before us upon defendant's motion for a new trial and exceptions.

MOTION.

The defendant strenuously claims that in fact no negligence existed as charged by the plaintiff, and that the record does not disclose any conditions or circumstances which would justify a finding of negligence by the jury. The two-fold grouping of charges just pointed out might warrant consideration of the testimony under two heads; (a) negligence of fellow servants as causing the injuries; (b) negligence of the defendant in failing to provide sufficient crew, appliances, or proper methods of doing the work, as causing those injuries.

In argument the plaintiff frankly states that his main contention is that this accident happened through the negligence of fellow servants who were handling the pole with him, either through their failure to retain their hold on the pole a sufficiently long time to permit him to clear himself from the dangerous position in which he was; or through their negligence in throwing the pole after he had helped them lift it and before he was clear of it. He further admits that so far as negligence is concerned it does not make much difference which they did. In this last statement, as a legal proposition, we concur.

It is difficult to visualize the particulars of the accident as it happened in a very brief moment. Upon the plaintiff's side of the case he is the only witness who attempts to tell us just what occurred. Taking his story at its full face value he placed himself in a position which would become one of danger if his associates voluntarily or involuntarily released their hold upon the pole. If that release were done negligently, without regard for his safety, then the plaintiff

has sustained his case.    If it were a pure accident, as might have happened, then there was no negligence so far as the conduct of fellow servants is concerned.

The defendant claims a pure accident to which the plaintiff contributed.    It especially claims that when the plaintiff got under the pole, and lifted, his effort was so effective and the result of his effort was so instantaneous that the pole by that effort, was thrown out of the grasp of the other employees.    Could this theory be true?    In order to be so then it must also be true that the strength of this one man, in lifting, exceeded the combined efforts of all the other four men for they, admittedly, could not lift the pole any higher by their united strength.    Moreover, the pole moved away from the truck body after the final lift.    But the testimony shows that the plaintiff lifted vertically.    From whence came the force which pushed the pole laterally if not from the other employees, and could this force come from them if, as defendant claims, the pole was suddenly thrown out of their grasp and control when the plaintiff lifted?    Again, if there were time for the other workmen to push the pole laterally, after it was lifted, then there was time for some one of them to have given the word "heave," so commonly used in such work, and there was time for some one to have said "out from under" if all those engaged with the plaintiff, and who should have appreciated his danger, had been using the degree of care which the dangerous conditions demanded.    We are fully convinced that the jury was justified in finding for the plaintiff on this branch of the case and it is unnecessary to discuss the other charges of negligence alleged in the declaration.

THE EXCEPTIONS.

During the progress of the trial, several exceptions were reserved but in argument only two are relied upon.

(1)    relates to the admission of evidence as to the method of unloading poles, the plaintiff being permitted to give testimony as to other customary methods of unloading poles; (2) exclusion of evidence that the method of unloading poles employed by the defendant had been used by it for a considerable period of time and had uniformly proved safe, adequate and· convenient.    The defendant asked one of its witnesses, who had testified to a long experience in

unloading poles and who had been employed by the defendant for many years where this method was used, if in his experience he had ever known of any one being injured in unloading poles by the method employed by the defendant at the time of the accident. We have already sustained the charge of negligence as to the acts of the fellow servants in dropping or throwing the pole, and as the rulings complained of both relate to charges of negligence which we have found it unnecessary to discuss, we hold that even if the rulings were exceptionable, which we cannot admit, then the defendant was not prejudiced upon the determining issue.

*Motion and exceptions overruled.*